IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAWN FRYE,

      **Plaintiff,**

v.

                                                                      **Case No. 25-cv-246-NJR**

C/O BRAMMEIER, JOHN M.
BARWICK, LATOYA HUGHES, C/O
WILLIAMS, C/O SHIREY, C/O
MEADOWS, C/O BRITTON, SGT.
AGNEW, LT. RANSOM, M. LIVELY,
JEREMY BONNETT, JOHN DOE #1
MAINTENANCE WORKER, JOHN
DOE #2 CORRECTIONAL OFFICER,
JOHN DOE #3 PLACEMENT OFFICER,
JOHN DOE #4, NURSE MURPHY,
CHRISTINE BROWN, and
JANE DOE NURSE,

      **Defendants.**

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Shawn Frye, an inmate of the Illinois Department of Corrections ("IDOC")
who is currently incarcerated at Pinckneyville Correctional Center, brings this action for
deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In the Complaint,
Frye alleges that he was denied running water in his cell. He also alleges that the lack of
water hampered his ability to practice his religion, and he was denied medical care for
dehydration. He alleges violations of the First and Eighth Amendments.

This case is now before the Court for preliminary review of the Complaint
pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

On October 25, 2024, Frye was moved to housing unit 5, gallery B, cell 55 (Doc. 1, p. 7). About a week later, the water in his cell stopped working. He verbally requested that a work order be submitted in order to turn the water back on, but the water remained off for multiple days (*Id.* at pp. 7-8). On November 2, Frye submitted a request slip to John Doe #4 Correctional Officer ("C/O"), requesting a work order for his sink (*Id.* at p. 24). On November 4 and 7, he wrote a request slip to warden John Barwick informing him of the issues with the water in his cell and requesting the issue be fixed, but he never heard from Barwick (*Id.* at p. 8). Between November 1 and November 19, Frye spoke with C/O Brammeier on multiple occasions and asked for a work order to repair his sink (*Id.*). Brammeier stated that he would talk to the lieutenant about the situation, but twice he told Frye that he would not submit a work order (*Id.*). Frye wrote several request slips to Brammeier and asked several times if he could retrieve water from the dayroom water fountain, but Brammeier refused (*Id.* at pp. 8-9).

On November 3, 4, and 5, Frye asked C/O Shirey if he could submit a work order for the water in his cell. He also submitted written requests to Shirey but failed to receive a response. Frye also verbally spoke to officers Britton, Williams, Martin, and Sergeant ("Sgt.") Agnew (Doc 1, p. 9). He specifically asked that they submit a work order for his

water, but they all ignored his requests (*Id.* at p. 10). Frye submitted a written request to Lieutenant ("Lt.") Ransom but never received a response (*Id.* at p. 9). He also wrote to John Doe #3 Placement Officer asking to be moved to another cell. On November 2 and 11, Frye wrote to John Doe #1 Maintenance Worker asking to fix his water (*Id.* at pp. 9, 24). He failed to receive a response from either officer (*Id.* at p. 10).

Frye also alleges that when he informed officers of the lack of water in his cell, he told them that the lack of water also impacted his ability to practice his religion (Doc. 1, p. 11). Frye notes that he is Muslim, and as part of his religion, he participates in the body purification ritual Wudu that requires water for the purification process (*Id.* at pp. 11, 13). He must be purified with water before he can approach his daily prayers (*Id.* at p. 12). He told officers Brammeier, Britton, Williams, Shirey, Martin, Agnew, Ransom, O'Leary, Meadows, John Doe #1 Maintenance Worker, and Warden Barwick that he was unable to practice his religion due to his lack of water (*Id.* at pp. 11-12, 14-16).

On November 13, 2024, Frye submitted a grievance about his access to running water (Doc. 1, p. 10). Frye alleges that the grievance informed grievance officer M. Lively of his condition, but he remained in the cell without running water (*Id.* at pp. 10, 20). He also indicated in his grievance that his cell lacked a panic button, and the lack of a button put him at risk because he was prone to seizures (*Id.* at p. 21). Lively denied the grievance and Jeremy Bonnett, John Barwick, and Latoya Hughes concurred in the denial (*Id.* at pp. 15, 21).

Frye alleges that the water started working again on November 19, 2024 (Doc. 1, p. 10). But from November 1 through November 19, he lacked access to running water

and suffered from dehydration (*Id.* at p. 11). Frye alleges that the cellhouse was also on institutional lockdown; he was unable to obtain water from the dayroom, and water was not passed out during meals (*Id.*). Frye was also on C Grade and could not purchase water from the commissary (*Id.*).

As a result of his lack of access to water, Frye suffered from dehydration, lightheadedness, dizziness, and, at some point, lost consciousness (Doc. 1, pp. 11, 17). On November 12, 2024, he informed correctional staff that he was suffering from dizziness and lightheadedness (*Id.* at p. 17). The officers directed him to submit a nurse sick call but failed to provide him with any care (*Id.*). His cell lacked a panic button, and he was unable to alert officers. During second shift, Nurse Murphy passed out medication to the gallery (*Id.* at p. 18). When she approached his cell, Frye immediately told her that he could not breathe and was experiencing chest pains, tightening, dizziness, and lightheadedness (*Id.*). She noted that all inmates complain at medline (*Id.*). Although he asked her for immediate help, she refused (*Id.*). The officer accompanying Nurse Murphy during her rounds, identified as John Doe #2, also stated that he would not help Frye and shut the food slot (*Id.* at pp. 20, 23). After Nurse Murphy left, Frye alleges that he passed out and was on the floor gasping for breath. His cellmate alerted officers and Nurse Murphy, but she informed him that she would not call for a medical emergency (*Id.* at p. 19).

During the inmate count on third shift, Frye's cellmate informed Sgt. Agnew about Frye's condition (Doc. 1, p. 19). Agnew indicated that he would try to call Nurse Murphy but that he did not think she would come to the cellhouse. Agnew never returned to Frye's cell (*Id.*). Frye also spoke to an additional unknown officer (also labeled as John

Doe #3) and requested medical care, but he also refused Frye's request for care (*Id.* at p. 23). The next morning, while Jane Doe Nurse was passing out medication, he told her about his loss of consciousness (*Id.*). He asked for immediate medical care, but the nurse refused. Frye informed her that he was suffering from chest pain and difficulty breathing, but the nurse left his cell (*Id.*). Frye also alleges that Christine Brown was liable for the delays in his medical care because she was the head of the healthcare unit and in charge of medical personnel (*Id.* at p. 22). Despite requesting care from Nurse Murphy, Frye alleges that he never saw a doctor or other medical provider (*Id.*).

### Preliminary Dismissals

Frye identifies several grievance officials as defendants. He alleges that he wrote a grievance that put these officials on notice of his lack of water and access to a panic button, but the grievance officials denied his grievance. However, the simple denial or mishandling of the grievances by these officials fails to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) ("[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause."). Thus, Frye's claims against M. Lively, Jeremy Bonnett, and Latoya Hughes are **DISMISSED without prejudice**.

Frye also fails to state a claim against Christine Brown. He alleges that Brown was in charge of the healthcare unit and in charge of all the employees who denied him medical care (Doc. 1, p. 22). But a defendant cannot be liable simply in her position as supervisor of the healthcare unit because there is no *respondeat superior* (or supervisory) liability under Section 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001). And

the pleading lacks any allegations suggesting that Brown knew of Frye's medical condition and acted with deliberate indifference. Thus, any claim against Brown is **DISMISSED without prejudice**.

Frye also alleges that he informed Correctional Officers Martin and O'Leary about his lack of access to water and its impact on his ability to practice his religious purification ritual (Doc. 1, pp. 9, 12, 16). But he fails to identify these officers as defendants in the case caption. Frye also refers to another John Doe correctional officer that he alleged worked on third shift on the day that Frye passed out from dehydration. Although he refers to the correctional officer as John Doe #3, he previously identified John Doe #3 as a placement officer. He fails to include this additional officer in the case caption. In order to be a party in the case, a plaintiff must identify them in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Because Frye failed to identify these individuals as defendants, any claim against them is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court designates the following counts:

Count 1:    **Eighth Amendment conditions of confinement claim against John Barwick, C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, John Doe #1 Maintenance Worker, John Doe #4 Correctional Officer, and John Doe #3 Placement Officer for housing Frye in a cell without running water.**

Count 2:    **First Amendment claim against John Barwick, C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O**

> **Britton, Sgt. Agnew, Lt. Ransom, John Doe #1 Maintenance Worker, and John Doe #3 Placement Officer for substantially burdening Frye's practice of his religion by denying him access to water.**

**Count 3:** **Eighth Amendment deliberate indifference to medical needs claim against Nurse Murphy, Sgt. Agnew, John Doe #2 Correctional Officer, and Jane Doe Nurse for failing to treat Frye's dehydration on November 12 and 13.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Frye states a viable claim in Count 1 for his denial of access to running water. Frye alleges that he made the defendants aware of his lack of a working sink, but they failed to fix the issue and refused to provide him with other sources of water. *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (collecting cases demonstrating that a lack of access to water violates the Eighth Amendment); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (prison officials must "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care."). Thus, Count 1 shall proceed against John Barwick, C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, John Doe

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

#1 Maintenance Worker, John Doe #4 Correctional Officer, and John Doe #3 Placement Officer.

Frye also adequately alleges that the lack of access to water impacted his ability to conduct the ritual purification process as part of his daily prayers. He alleges that he informed the defendants that he was unable to participate in this ritual without access to water, but they failed to provide him with water. *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009) ("Prison officials may restrict inmate's ability to practice his faith so long as the restriction is reasonably related to a legitimate penological interest."). Thus, Count 2 shall proceed against John Barwick, C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, John Doe #1 Maintenance Worker, and John Doe #3 Placement Officer.

Finally, Frye states a viable claim against Nurse Murphy, Sgt. Agnew, John Doe #2 Correctional Officer, and Jane Doe Nurse in Count 3 for denying Frye medical care on November 12 and 13. *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) ("Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need.") (quoting *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021)).

## Disposition

For the reasons stated above, Count 1 shall proceed against John Barwick, C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, John Doe #1 Maintenance Worker, John Doe #4 Correctional Officer, and John Doe #3 Placement Officer. Count 2 shall proceed against John Barwick,

C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, John Doe #1 Maintenance Worker, and John Doe #3 Placement Officer. Count 3 shall proceed against Nurse Murphy, Sgt. Agnew, John Doe #2 Correctional Officer, and Jane Doe Nurse. John Barwick will also be added in his official capacity to respond to discovery aimed at identifying the unknown defendants. All other claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for John Barwick (individual and official capacity), C/O Brammeier, C/O Williams, C/O Shirey, C/O Meadows, C/O Britton, Sgt. Agnew, Lt. Ransom, and Nurse Murphy: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Frye. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Frye, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Frye's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order**.**

If judgment is rendered against Frye, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Frye is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  March 19, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**

**<u>Notice to Plaintiff</u>**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**